MICHAEL J. NADER, CA Bar No. 200425
michael.nader@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
500 Capitol Mall
Suite 2500
Sacramento, CA  95814
Telephone:  916-840-3150
Facsimile:   916-840-3159

JARED L. PALMER, CA Bar No. 287974
jared.palmer@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:  415-442-4810
Facsimile:   415-442-4870

Attorneys for Defendant
UNIFIRST CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANA GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIFIRST CORPORATION, a Massachusetts corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.  2:21-cv-8400<br><br>**DEFENDANT UNIFIRST CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453**<br><br>*[Filed concurrently with Civil Cover Sheet; Declarations of Jared L. Palmer, Shirley Yahr, and Hyowook Chiang, Ph.D.; Corporate Disclosure Statement; and Notice of Interested Parties]*<br><br>Complaint Filed: August 30, 2021<br>Trial Date:       None Set<br>Judge:            Hon. TBD |

# **TABLE OF CONTENTS**

I.  THE STATE COURT ACTION ................................................................. 1

II.  THIS COURT HAS JURISDICTION UNDER THE CLASS
ACTION FAIRNESS ACT ...................................................................... 3

    A.  The Proposed Putative Class Consists of More Than 100
Members........................................................................................... 4

    B.  UniFirst and Plaintiff Are Not Citizens of the Same State ..................... 4

    C.  The Amount in Controversy Exceeds an Aggregate of
$5,000,000........................................................................................ 7

    D.  The Amount in Controversy .................................................................. 9

        1)  The Amount Placed in Controversy by Unpaid Wage
Claim........................................................................................... 10

        2)  The Amount Placed in Controversy by Failure to Pay
Wages in Timely Manner ............................................................ 11

        3)  The Amount Placed in Controversy by the Failure to
Provide Meal Periods Claim........................................................ 12

        4)  The Amount Placed in Controversy by the Failure to
Provide Rest Periods Claim ......................................................... 14

        5)  The Amount Placed in Controversy by the Failure to
Provide Accurate Wage Statements Claim.................................. 16

        6)  The Amount Placed in Controversy by the Waiting
Time Penalty Claim ..................................................................... 18

        7)  Plaintiff's Request for Attorneys' Fees Places an
Additional $1.040 Million in Controversy ................................. 20

    E.  Plaintiff's Claims, Including Attorneys' Fees, Place Nearly
$11.8 Million in Controversy.............................................................. 22

III.  DEFENDANT HAS SATISFIED THE REMAINING
REMOVAL REQUIREMENTS ............................................................ 23

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Arias v. Residence Inn by Marriott*,
    936 F.3d 920 (9th Cir. 2019) ...................................................................*passim*

*Ayala v. Cox Auto, Inc.*,
    No. CV 16-06341-GHK, 2016 WL 6561284 (C.D. Cal. Nov. 4,
    2016) ........................................................................................................ 6

*Barcia v. Contain-A-Way, Inc.*,
    No. 07cv938–IEG–JMA, 2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ................ 21

*Bolton v. U.S. Nursing Corp.*,
    No. C 12–04466 LB, 2012 WL 5269738 (N.D. Cal. Oct. 23, 2012) ................... 19

*Brinker Rest. Corp. v. Sup. Ct.*,
    53 Cal. 4th 1004 (2012) ................................................................................ 15

*Byrd v. Masonite Corp.*,
    No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal.
    May 5, 2016) ............................................................................................ 10

*Campbell v. Vitran Exp., Inc.*,
    471 F. App'x 646 (9th Cir. 2012) .................................................................. 8

*Chavez v. Pratt (Robert Mann Packaging), LLC*,
    No. 19-CV-00719-NC, 2019 WL 1501576 (N.D. Cal. Apr. 5, 2019) ........... 13, 15

*Dada v. CyberCoders, Inc.*,
    No. 8:18-cv-01023-JVS-JDE (C.D. Cal. Mar. 6, 2020) ...................................... 21

*Danielsson v. Blood Centers of Pac.*,
    No. 19-CV-04592-JCS, 2019 WL 7290476 (N.D. Cal. Dec. 30, 2019) ......... 13, 15

*Dart Cherokee Basin Op. Co., LLC v. Owens*,
    574 U.S. 81 (2014) ............................................................................... 6, 7, 9

*Ehrman v. Cox Commc'ns, Inc.*,
    932 F.3d 1223 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2566 (2020) ................... 6

DEFENDANT UNIFIRST CORPORATIONS'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED
STATES DISTRICT COURT

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
　　899 F.3d 785 (9th Cir. 2018) ................................................................. 20

*Hanlon v. Chrysler Corp.*,
　　150 F.3d 1011 (9th Cir. 1998) ............................................................... 21

*The Hertz Corp. v. Friend*,
　　130 S. Ct. 1181 (2010) ............................................................................ 5

*Jasso v. Money Mart Express, Inc.*,
　　No. 11-CV-5500 YGR, 2012 WL 699465 (N. D. Cal. Mar. 1, 2012) ................ 11

*Kantor v. Warner-Lambert Co.*,
　　265 F.3d 853 (9th Cir. 2001) ................................................................... 6

*Kantor v. Wellesley Galleries, Ltd.*,
　　704 F.2d 1088 (9th Cir. 1983) ................................................................. 6

*Korn v. Polo Ralph Lauren Corp.*,
　　536 F. Supp. 2d 1199 (E.D. Cal. 2008) .................................................... 8

*LaCross v. Knight Transp. Inc.*,
　　775 F.3d 1200 (9th Cir. 2015) ................................................................. 7

*Lew v. Moss*,
　　797 F.2d 747 (9th Cir. 1986) ................................................................... 6

*Lewis v. Verizon Commc'ns, Inc.*,
　　627 F.3d 395 (9th Cir. 2010) ................................................................... 7

*Mamika v. Barka*,
　　68 Cal. App. 4th 487 (1998) ............................................................. 18, 19

*Marlo v. United Parcel Serv., Inc.*,
　　No. CV 03-04336 DDP, 2009 WL 1258491 (C.D. Cal. May 5, 2009) ............... 13

*McCabe v. General Foods Corp.*,
　　811 F.2d 1336 (9th Cir. 1987) ................................................................. 2

*Mejia v. DHL Express (USA), Inc.*,
　　No. CV 15–890–GHK (JCx), 2015 WL 2452755 (C.D. Cal. May 21,
　　2015) ..................................................................................................... 17

DEFENDANT UNIFIRST CORPORATIONS'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED
STATES DISTRICT COURT

*Mendoza v. Savage Servs. Corp.*,
   No. 2:19-CV-00122-RGK-MAA, 2019 WL 1260629 (C.D. Cal.
   Mar. 19, 2019) ........................................................................................ 13, 15

*Muniz v. Pilot Travel Ctrs. LLC*,
   No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal.
   May 1, 2007) .................................................................................................. 8

*Muniz v. Pilot Travel Ctrs. LLC*,
   No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (N.D. Cal.
   May 7, 2007) ................................................................................................ 13

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) ...................................................................................... 2

*Oda v. Gucci Am., Inc.*,
   No. 2:14-CV-07469-SVW, 2015 WL 93335 (C.D. Cal. Jan. 7, 2015) ............... 10

*Olson v. Becton, Dickinson & Co.*,
   No. 19-cv-865-MMA, 2019 WL 4673329 (S.D. Cal. Sept. 25, 2019) ............... 15

*Panter et al. v. Trinity River Lumber Co.*,
   No. 2:14-cv-02277-MCE (E.D. Cal. May 16, 2017)......................................... 21

*Pineda v. Bank of Am., N.A.*,
   50 Cal.4th 1389 (2010) ................................................................................ 19

*Quintana v. Claire's Stores, Inc.*,
   No. 13-0368-PSG, 2013 WL 1736671 (N.D. Cal. Apr. 22, 2013) ...................... 19

*Ray v. Wells Fargo Bank, N.A.*,
   No. CV 11-01477 AHM, 2011 WL 1790123 (C.D. Cal. May 9, 2011) ............... 10

*Rodriguez v. AT&T Mobility Servs. LLC*,
   728 F.3d 975 (9th Cir. 2013) .......................................................................... 8

*Salter v. Quality Carriers, Inc.*,
   974 F.3d 959 (9th Cir. 2020) ....................................................................... 7, 9

*Soto v. Tech Packaging, Inc.*,
   No. ED CV 19-1766-MWF (SHKx), 2019 WL 6492245 (C.D. Cal.
   Dec. 3, 2019).............................................................................................. 17

Case No.   2:21-cv-8400

*Std. Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) .......................................................................... 7

*Stevenson v. Dollar Tree Stores, Inc.*,
    No. CIV S-11-1433 KJM, 2011 WL 4928753 (E.D. Cal. Oct. 17, 2011) ................. 19

*United Parcel Serv. Wage & Hour Cases*,
    196 Cal. App. 4th 57 (2011) ............................................................. 15

**STATUTES**

28 U.S.C.

    § 84(c) ...................................................................................... 23
    § 1332(c) .................................................................................... 5
    § 1332(d) ............................................................................ 1, 3, 22
    § 1332(d)(1)(B) ............................................................................ 3
    § 1332(d)(2) ................................................................................ 7
    § 1332(d)(2)(A) ............................................................................ 5
    § 1332(d)(6) ............................................................................. 4, 7
    § 1332(d)(8) ................................................................................ 3
    § 1441 ...................................................................................... 3
    § 1441(a) ............................................................................... 2, 23
    § 1446(a) ............................................................................... 2, 23
    § 1446(b) ................................................................................... 2
    § 1446(d) .................................................................................. 23
    § 1453 ................................................................................... 1, 3
    § 1711 ...................................................................................... 1

CAFA ................................................................................... *passim*

California Code of Civil Procedure

    § 340(a) ................................................................................... 17
    § 382 ....................................................................................... 3

California Code of Regulations. ...................................................... 1, 2

California Labor Code

    § 201 .................................................................................... 1, 18
    § 201.5 .................................................................................... 18

DEFENDANT UNIFIRST CORPORATIONS'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED
STATES DISTRICT COURT

§ 202 .................................................................................................... 18

§ 202.5 ................................................................................................. 18

§ 203 ........................................................................................... 1, 18, 19

§ 204 ................................................................................................ 1, 11

§ 210 .................................................................................................... 11

§ 218.5 and § 1194 ............................................................................... 20

§ 206 ...................................................................................................... 1

§ 226 .................................................................................................... 16

§ 226(a) .......................................................................................... 1, 16

§ 226(e)(1) ........................................................................................... 16

§ 226.7 ................................................................................................... 1

§ 226.7(b) ............................................................................................ 14

§ 510 ...................................................................................................... 1

§ 512 ...................................................................................................... 1

§ 1182.12 ............................................................................................... 1

§ 1194 ........................................................................................... 1, 20

§ 1194.2 ................................................................................................. 1

§ 1197 ..................................................................................................... 1

§ 1198 ..................................................................................................... 1

§ 2800 ..................................................................................................... 2

§ 2802 ..................................................................................................... 2

Unfair Competition Law [California Business & Professions Code §
17200 *et seq.*] ...................................................................................... 2

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 7.1 .................................................... 23

DEFENDANT UNIFIRST CORPORATIONS'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED
STATES DISTRICT COURT

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF JUANA GARCIA, AND HER ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant UniFirst Corporation hereby removes to the United States District Court for the Central District of California the above-captioned state court action originally filed as Case No. CIV SB 2123352 in the Superior Court of the State of California for the County of San Bernardino. Removal is proper on the following grounds:

# I.    THE STATE COURT ACTION

1.      On August 30, 2021, plaintiff Juana Garcia ("Plaintiff") filed a putative Class Action Complaint (the "Complaint" or "State Court Action") against UniFirst Corporation ("UniFirst" or "Defendant") in the Superior Court of California, San Bernardino County, entitled *Juana Garcia, individually and on behalf of all others similarly situated, Plaintiff, v. UniFirst Corporation, a Massachusetts corporation, and DOES 1-50, inclusive, Defendants*, Case No. CIV SB 2123352.  The Complaint is the operative complaint in this matter.

2.      The Complaint alleges claims for: (1) Failure to Pay All Wages [California Labor Code §§ 204, 206, 510, 1182.12, 1194, 1194.2, 1197, 1198, and the applicable Industrial Welfare Commission Wage Orders (the "Wage Orders") and California Code of Regulations ("Cal. Code Regs.")]; (2) Failure to Provide Meal Periods or Compensation in Lieu Thereof [California Labor Code § 512 and the applicable Wage Orders and Cal. Code Regs.]; (3) Failure to Permit Rest Periods or Provide Compensation in Lieu Thereof [California Labor Code § 226.7 and the applicable Wage Orders and Cal. Code Regs.]; (4) Knowing and Intentional Failure to Provide Accurate Itemized Wage Statements [California Labor Code § 226(a) and the applicable Wage Orders and Cal. Code Regs.]; (5) Waiting Time Penalties [California Labor Code §§ 201-203 and the applicable Wage Orders and Cal. Code

Regs.]; (6) Failure to Reimburse Business Expenses [California Labor Code §§ 2800, 2802 and the applicable Wage Orders and Cal. Code Regs.]; and (7) Violations of the Unfair Competition Law [California Business & Professions Code § 17200 *et seq.*].

3.      On September 23, 2021, Defendant, through its agent for service of process, received a copy of the Summons and Complaint, was well as other documents filed in the State Court Action. Declaration of Jared L. Palmer ("Palmer Decl."), ¶ 2. A true and correct copy of the Complaint is attached as **<u>Exhibit A</u>** to this Notice of Removal.

4.      As required by 28 U.S.C. § 1446(a), Defendant hereby provides this Notice with copies of all process, pleadings, and orders received by Defendant in this action. True and correct copies of these documents are attached as **<u>Exhibit B</u>** to this Notice of Removal. Defendant has not been served with any pleadings, process, or orders besides those attached. Palmer Decl., ¶ 3.

5.      On October 21, 2021, Defendant timely filed an answer to Plaintiff's Complaint. A true and correct copy of the Answer is attached as **<u>Exhibit C</u>** to this Notice of Removal.

6.      Plaintiff has not yet identified any of the fictitious "Doe" defendants referenced in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

7.      <u>This Notice is Timely</u>. This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within thirty (30) days of the service upon Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

Case No.  2:21-cv-8400

DEFENDANT UNIFIRST CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

## II.    THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

8.      Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and the claims asserted against UniFirst Corporation pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

9.      CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); Ex. A, Complaint ¶ 16.

10.      Plaintiff asks "[t]hat the Court certify the proposed Class and Subclasses, and any other class or subclasses as appropriate under California Code of Civil Procedure section 382." Ex. A, Complaint, Prayer for Relief.  She seeks to represent "All current and former non-exempt employees employed by [UniFirst] in the State of California within four years prior to the commencement of this action to the date of class certification." *Id*., Complaint ¶ 16.

11.      Removal of a class action under CAFA is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

12.      UniFirst denies any liability in this case, both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative class. UniFirst also intends to oppose class certification and believes that class treatment is inappropriate under these circumstances in part because there are many material differences between the experience of Plaintiff and the putative class members she

seeks to represent. UniFirst expressly reserves all rights to oppose class certification and to contest the merits of the claims asserted in the Complaint. However, for purposes of the jurisdictional requirements for removal only, the allegations in Plaintiff's Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6).

### A.    The Proposed Putative Class Consists of More Than 100 Members

13.    In the Complaint, Plaintiff defines the proposed "Class" as: "All current and former non-exempt employees employed by Defendants in the State of California within four years prior to the commencement of this action to the date of class certification." Ex. A, Complaint, ¶ 16. The proposed class period, therefore, runs from August 30, 2017 through the date of class certification. Plaintiff further defines a proposed "Waiting Time Sub-Class" as "Those members of the Class who separated from their employment with Defendants three years prior to the commencement of this action to the date of class certification." Ex. A, Complaint, ¶ 17.

14.    Defendant's employment records show that there are at least 1,375 current and former employees who fall within Plaintiff's proposed "Class." Declaration of Hyowook Chiang, Ph.D. ("Chiang Decl."), ¶ 12; *see also* Ex. A, Complaint ¶ 28 ("Plaintiff is informed, believes and thereon alleges that the Class consists of more than 100 persons").[1]

15.    Accordingly, while UniFirst denies that class treatment is permissible or appropriate, the proposed class consists of well over 100 members.

### B.    UniFirst and Plaintiff Are Not Citizens of the Same State

16.    Under CAFA's minimum diversity of citizenship requirement, the

---

[1] For purposes of calculating the amount in controversy, UniFirst relies herein on the 914 putative class members for whom full timekeeping and pay data could be collected in advance of the statutory deadline to remove. *See* Chiang Decl., ¶¶ 12, 15; Yahr Decl., ¶ 14. The data relied upon covers August 30, 2017 to July 24, 2021. Chiang Decl., ¶ 7. Thus, the calculations set forth herein are <u>lower</u> than the actual amount in controversy for the entire putative class of 1,375 (*Id.*, ¶ 12).

DEFENDANT UNIFIRST CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

1    plaintiff or any member of the putative class must be a citizen of a different state
2    from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

3         17.    <u>Citizenship of Defendant</u>. Pursuant to 28 U.S.C. § 1332(c), "a
4    corporation shall be deemed to be a citizen of any State by which it has been
5    incorporated and of the State where it has its principal place of business." The United
6    States Supreme Court established the proper test for determining a corporation's
7    principal place of business for purposes of diversity jurisdiction in *The Hertz Corp.*
8    *v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded that the "'principal
9    place of business' is best read as referring to the place where a corporation's officers
10   direct, control, and coordinate the corporation's activities." *Id.* at 1184. The Court
11   further clarified that the principal place of business is the place where the corporation
12   "maintains its headquarters – provided that the headquarters is the actual center of
13   direction, control and coordination, i.e., the 'nerve center.'" *Id.*

14        18.    At all times on or after the date this action was filed, defendant UniFirst
15   Corporation was, and still is, a corporation organized and incorporated under the
16   laws of the State of Massachusetts. *See* Declaration of Shirley Yahr ("Yahr Decl."), ¶
17   4. Plaintiff does not dispute this. *See* Ex. A, Complaint ¶ 8. Defendant has not been
18   incorporated in California. *See* Yahr Decl., ¶ 5. Defendant's principal place of
19   business is in the State of Massachusetts as it performs the vast majority of its
20   executive and administrative functions at its headquarters at 68 Jonspin Road,
21   Wilmington, Massachusetts 01887. *Id.*, ¶ 6. Defendant's executive officers maintain
22   their offices at Defendant's headquarters in Wilmington, Massachusetts. *Id.*, ¶ 7.
23   From its headquarters in Wilmington, Massachusetts, Defendant makes and
24   implements company-wide operating, financial, employee relations, marketing,
25   development, customer care, accounting, income tax, treasury, and legal policy
26   decisions. *Id.*, ¶ 8. Meetings of Defendant's Board of Directors and stockholders take
27   place in the State of Massachusetts. *Id.*, ¶ 9. Defendant's financial records are
28   maintained in the State of Massachusetts. *Id.*, ¶ 10. Defendant's tax returns are also

1  filed from the State of Massachusetts. *Id.*, ¶ 11. Accordingly, Defendant is not a

2  citizen of the State of California. Rather, Defendant is a citizen of the State of

3  Massachusetts pursuant to the "nerve center" test and its incorporation.

4    19.    <u>Citizenship of Plaintiff and putative class members</u>. For diversity

5  purposes, an individual is a "citizen" of the state in which she is domiciled. *Kantor v.*

6  *Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is

7  prima facie evidence of his or her domicile. *Ayala v. Cox Auto, Inc*., No. CV 16-

8  06341-GHK (ASx), 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State*

9  *Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). An individual's

10  domicile is the place where she resides with the intention to remain or to which she

11  intends to return. *Kantor v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

12  Additionally, an allegation of minimal diversity is sufficient where the notice of

13  removal provides a "short and plaint statement . . . based on information and belief."

14  *Ehrman v. Cox Commc'ns, Inc*., 932 F.3d 1223, 1228 (9th Cir. 2019), *cert. denied*,

15  140 S. Ct. 2566 (2020); *see also Dart Cherokee Basin Op. Co., LLC v. Owens*, 574

16  U.S. 81, 87 (2014) (explaining that a notice of removal need only include "a short

17  and plain statement of the grounds for removal" and "courts should apply the same

18  liberal rules to removal allegations that are applied to other matters of pleading"

19  (internal quotations and alteration omitted)).

20    20.    The Complaint alleges that "Plaintiff is an individual who resides in San

21  Bernardino County, California." Ex. A, Complaint ¶ 7. Likewise, Defendant's

22  employment records confirm that throughout her employment with Defendant,

23  Plaintiff lived in the State of California, including the home address that Plaintiff

24  provided for payroll purposes. Yahr Decl, ¶ 16. Thus, Plaintiff is a citizen of the

25  State of California.

26    21.    Members of the proposed "Class," who by definition are or were

27  employed in California, are presumed to be primarily citizens of the State of

28  California. *See, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of

Case No.  2:21-cv-8400

DEFENDANT UNIFIRST CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES
DISTRICT COURT

employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiff was somehow a citizen of Massachusetts (and there is no evidence that she is), there is no possible way that the hundreds of putative class members, all of whom worked in California (Ex. A, Complaint ¶ 16), were also all citizens of Massachusetts.

### C.    The Amount in Controversy Exceeds an Aggregate of $5,000,000

22.    CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2). In calculating the amount in controversy, a court must aggregate the claims of all individual class members. 28 U.S.C. § 1332(d)(6).

23.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. To satisfy this burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." (internal quotation marks and citations omitted)). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. Importantly, plaintiffs seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court." *Std. Fire Ins. Co. v. Knowles*, 568 U.S.

588, 595–96 (2013).

24.     Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

25.     Although UniFirst denies that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal only, if Plaintiff were to prevail on the claims and allegations in her Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 million.

26.     Plaintiff has not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

27.     As described further below, as well as in the concurrently filed declarations of Hyowook Chiang and Shirley Yahr, the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

### D.    <u>The Amount in Controversy</u>

28.    "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924. For present purposes, it is sufficient to note that Plaintiff's claims place more than $5 million in controversy. UniFirst reserves the right to present evidence establishing with further detail and precision the amount placed in controversy should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegations with competent proof," internal quotation marks and citations omitted).

29.    In determining the amount in controversy to support its Notice of Removal, Defendant applies a reasonable violation rate based only on damages sought by Plaintiff as a result of the alleged: (1) failure to pay all wages earned, (2) failure to timely pay all wages due during employment, (3) failure to "regularly" provide compliant meal periods; (4) failure to "regularly" authorize and permit compliant rest periods; (5) failure to provide accurate wage statements; (6) waiting time penalties for final wages; and (7) attorneys' fees. Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, UniFirst does not include additional amounts placed in controversy by Plaintiff's cause of action for failure to reimburse business expenses. That said, Defendant reserves the right to do so in opposition to any remand motion.

30.    UniFirst also based its removal calculations only on those current and former employees for whom it was able to gather full timekeeping and pay data,

which numbered 914 out of a total class of 1375.[2] Thus, UniFirst used a smaller putative class than that alleged by Plaintiff. If necessary, UniFirst could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint and for the entire proposed class; however, this matter meets the amount controversy threshold even with the reduced class figures.

### 1)    The Amount Placed in Controversy by Unpaid Wage Claim

31.    In her First Cause of Action, Plaintiff alleges that UniFirst failed to pay minimum wages and overtime to Plaintiff and other putative class members. Specifically, Plaintiff alleges that "during the Class Period, Plaintiff and Class Members regularly worked over eight (8) hours and/or 10 hours per workday and/or over 40 hours per work week" and that "during the Class Period, Defendants failed to pay Plaintiff and Class Members for hours worked (including minimum, regular, and overtime wages) by automatically deducting and rounding meal periods when a proper meal period was not taken and requiring off-the-clock work during meal periods and before and after their shifts without compensation, among other things." Ex. A, Complaint ¶¶ 46-47.

32.    While Plaintiff does not allege the amount of alleged unpaid time worked, applying a reasonable violation rate of one hour of unpaid time for each week worked has been found to be reasonable by the federal courts where the plaintiff failed to allege the frequency or amount of unpaid time. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW (JPRx), 2015 WL 93335, at *4 (C.D. Cal. Jan. 7, 2015); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-

---

[2] Not all class data for the entire class period was easily available for analysis. As a result, only a portion of the data was analyzed for the below estimate. However, even with a portion of the class data absent, the amount in controversy easily reaches the jurisdictional minimum.

01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011); *see also Jasso v. Money Mart Express, Inc*., No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"). Also, even though Plaintiff mixes her unpaid time allegations among regular and overtime, Defendant only applies the average regular rate of pay to calculate this amount in controversy.

33.    Based on a review of Defendant's business records, there were 344,846 shifts worked between August 30, 2017 and July 24, 2021. Chiang Decl., ¶ 17. Applying a reasonable violation rate of ten minutes of straight-time only to each shift worked (even less than the 1 hour per week violation rate approved by the courts), the number of potential allegedly unpaid straight-time hours would be 57,474.33 hours. *Id*. at ¶ 18. Multiplying this number of straight-time hours by the average base hourly rate of $15.20 equates to $873,610. *Id*. at ¶ 18. Consequently, the amount placed in controversy by the failure to pay straight-time wages is at least **$873,610.00**. *Id.*

**2)    The Amount Placed in Controversy by Failure to Pay Wages in Timely Manner**

34.    Plaintiff alleges in her First Cause of Action that UniFirst failed to timely pay wages during employment in violation of Labor Code Section 204. Ex. A, Complaint ¶¶ 38-39, 99.

35.    According to Labor Code sections 204 and 210, the penalty for untimely payment of wages is $100 for the first violation and $200 for every subsequent violation with an additional penalty of 25% of the wages owed.

36.    Upon review of UniFirst's records, there were 703 putative class members who were provided a wage statement from August 30, 2020 through July 24, 2021. Chiang Decl., ¶ 26. Defendant applied the statutory $100 penalty for the first pay period for each employee, and the statutory $200 penalty for each subsequent pay period.  Defendant did not add any additional amounts provided by

the Labor Code for the 25% of the alleged wages owed. *See id*. There are at least 22,924 affected pay periods in the putative class period. *Id*. By conservatively applying the statutory penalties to Plaintiff's allegations, the total amount of penalties would be at least $4,514,500. *Id*. Consequently, the amount placed in controversy by this claim is at least **$4,514,500**. *Id*.

### 3) The Amount Placed in Controversy by the Failure to Provide Meal Periods Claim

37.     In her Second Cause of Action, Plaintiff alleges that "[t]hroughout the Class Period, Plaintiff and Class Members did not receive compliant meal periods when working more than five (5) hours and/or 10 hours per workday because their first and second meal periods were missed, late, interrupted, short, and/or not free of all duties. In addition, Defendants rounded Plaintiff's and Class Members' meal periods." Ex. A, Complaint ¶ 55.

38.     Plaintiff further alleges the following with respect to her meal period claim:

> "[D]uring the Class Period, Defendants deprived Plaintiff and Class Members of the opportunity to take all of their statutorily entitled meal periods within the appropriate time intervals or provide compensation in lieu thereof in violation of the Labor Code and IWC Wage Orders. During the Class Period, Defendants failed to provide timely off-duty 30-minute meal periods within the appropriate time intervals to Plaintiff and other Class members as required by Labor Code section 512 and section 11 of the applicable Wage Order. Specifically, Plaintiff and Class Members **regularly** worked through their meal periods, off-the-clock, due to Defendants' understaffing, work demands, and quotas. Specifically, Defendants pressured Plaintiff and other Class Members to meet the company's quotas."

*Id*. at ¶ 22 (emphasis added). The Complaint further alleges that "Defendants have

consistently maintained and enforced against Plaintiff and Class Members unlawful employment practices and policies which violate the Labor Code and IWC Wage Orders." *Id.*, ¶ 20. As such, Plaintiff's allegation is that Defendant "regularly" engaged in class-wide violations of its duty to provide each member of the putative class with a compliant meal period and meal period premium.

39.    Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided. *See Marlo v. United Parcel Serv., Inc.*, No. CV 03-04336 DDP, 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009). Meal period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *4 (N.D. Cal. May 7, 2007).

40.    When determining the amount placed in controversy by a plaintiff's allegations regarding "regular" and "class-wide" meal period violations like those alleged by Plaintiff in the Complaint, a 20% violation rate that is uniformly applied across all members of the putative class period is both reasonable and conservative. *Danielsson v. Blood Centers of Pac.*, No. 19-CV-04592-JCS, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable where the plaintiff alleged a "pattern or practice" of violations); *Mendoza v. Savage Servs. Corp.*, No. 2:19-CV-00122-RGK-MAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (finding that a 20% violation rate for meal and rest breaks was noting where the complaint alleged a "pattern and practice" of violations, and noting that courts in the Central District of California "routinely apply a 20% violation rate . . . for meal and rest period premiums" and citing cases).

41.    Based on a review of Defendant's business records, putative class members worked at least 336,256 shifts with more than five hours of shift time recorded between August 30, 2017 and July 24, 2021. Chiang Decl., ¶ 19. The

average base hourly rate of the putative class members was at least $15.20 per hour during this period. Chiang Decl., ¶ 7. Assuming a 20% violation rate, and utilizing the average base hourly rate paid to putative class members of $15.20, the total number of alleged unpaid meal period violations would be 67,251 and the amount of total meal period premiums would be least $1,022,218.00. *Id*. at 20. UniFirst denies that any such meal period premium pay is owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, UniFirst relies on Plaintiff's allegations that the premium pay is owed. UniFirst applied a reasonable violation rate to place the amount in controversy by Plaintiff's claim for failure to provide legally compliant meal periods to be at least **$1,022,218.00.**

        **4)**        **The Amount Placed in Controversy by the Failure to Provide Rest Periods Claim**

        42.        Plaintiff's Third Cause of Action also alleges rest period violations on a class-wide basis. The Complaint alleges that "[d]uring the Class Period, Plaintiff and Class Members did not receive compliant 10-minute rest periods for every four hours worked or major fraction thereof because rest breaks were missed, interrupted, shortened, and/or not free of all duties." Ex. A, Complaint ¶ 65. The Complaint further alleges that:

        "Defendant failed to provide rest breaks to Plaintiff and Class Members due to its understaffing and quotas as mentioned above [in paragraph 22]. As such, Plaintiff and Class Members **regularly** missed their rest breaks, had them restricted to the worksite, shortened, interrupted, and/or missed altogether. Thus, Plaintiff and Class Members were denied off-duty rest periods."

*Id*. at ¶ 23 (emphasis added). Plaintiff further alleges that "[d]uring the Class Period, Defendants failed to pay Plaintiff and Class Members rest period premiums for noncompliant rest periods pursuant to Labor Code section 226.7(b) and the applicable IWC Wage Order." *Id*., ¶ 66. She further alleges that "Defendants have

consistently maintained and enforced against Plaintiff and Class Members unlawful employment practices and policies which violate the Labor Code and IWC Wage Orders." *Id*., ¶ 20. Plaintiff further alleges that "[a]s a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and Class Members have sustained and continue to sustain damages, including loss of earnings, in an amount to be established at trial plus prejudgment interest pursuant to statute." *Id*., ¶ 67. As such, Plaintiff's allegation is that Defendant's implemented policy and practices resulted in "regular" and class-wide failure to authorize and permit rest breaks.

43.    Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct*., 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Olson v. Becton, Dickinson & Co*., No. 19-cv-865-MMA, 2019 WL 4673329, *4-5 (S.D. Cal. Sept. 25, 2019); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

44.    As with meal period violations, applying a 20% violation rate is both reasonable and conservative where, as here, Plaintiff contends that Defendant "consistently maintained and enforced" "unlawful employment practices and policies which violated the Labor Code" throughout the alleged class period. Ex. A, Complaint ¶ 20. *Danielsson*, 2019 WL 7290476, at *6; *Chavez*, 2019 WL 150576, at *3; *Mendoza*, 2019 WL 1260629, at *2.

45.    Based on a review of Defendant's business records, putative class members worked at least 342,244 shifts 3.5 hours or longer between August 30, 2017 and July 24, 2021. Chiang Decl., ¶ 21. The average base hourly rate of the putative class members was at least $15.20 per hour during this period. *Id*. ¶ 7. Assuming a 20% violation rate, and utilizing the average base hourly rate paid to

15

DEFENDANT UNIFIRST CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

putative class members of $15.20, the total number of alleged rest period violations would be 68,449 and the amount of allegedly unpaid rest period premiums would be at least $1,040,422.00. *Id.* at 22. UniFirst denies that any such rest period premium pay is owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, UniFirst relies on Plaintiff's allegations that the premium pay is owed. UniFirst applied a reasonable violation rate to calculate an amount in controversy of at least **$1,040,422.00.**

**5)**  **The Amount Placed in Controversy by the Failure to Provide Accurate Wage Statements Claim**

46.    Plaintiff's Fourth Cause of Action alleges that Defendant failed to provide putative class members with accurate wage statements in violation of Labor Code § 226(a). Specifically, Plaintiff alleges that UniFirst's wage statements "did not accurately reflect the total number of hours worked by Plaintiff and Class Members at each corresponding pay rate, and the gross and net wages earned, among other things, making it difficult for Plaintiff and Class Members to determine whether they were paid correctly for all hours worked, which deductions were made, and the extent of any underpayment" in violation of Labor Code section 226, and seeks penalties under that statute. Ex. A, Complaint ¶¶ 74-75.

47.    Under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1).

48.    UniFirst denies that any such penalties are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, UniFirst relies on Plaintiff's allegations that the penalties are owed. Plaintiff alleges that wage

statements issued to Plaintiff and class members " did not accurately reflect the total number of hours worked by Plaintiff and Class Members at each corresponding pay rate, and the gross and net wages earned, among other things." Ex. A, Complaint ¶ 74. As such, this is a derivative claim alleging that based on the alleged class wide violations regarding time worked as well as wages and breaks due, the wage statements reflected these alleged violations and thus were also improper. Based on those allegations, it is reasonable to assume, for the purposes of this jurisdictional analysis only, that all class members received inaccurate wage statements each pay period. *See, e.g.*, *Mejia v. DHL Express (USA), Inc.*, No. CV 15–890–GHK (JCx), 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) (concluding it is appropriate to use 100% violation rate for wage statement claim where the claim is derivative); *Soto v. Tech Packaging, Inc.*, No. ED CV 19-1766-MWF (SHKx), 2019 WL 6492245, at *7 (C.D. Cal. Dec. 3, 2019).

49.    UniFirst's practice during the one-year prior to the filing of the Complaint has been to issue paychecks to employees on a weekly basis (every week).[3] As such, a pay period includes one workweek. Yahr Decl., ¶ 14.

50.    Based on a review of UniFirst's records, there are at least 703 putative class members who worked an aggregate 22,924 weekly pay periods between August 30, 2020 and July 24, 2021. Chiang Decl., ¶ 8. There are at least 394 putative class members who worked 41 or more pay periods and whose potential exposure is capped at $4,000. Chiang Decl., ¶ 24. The estimated penalties for those 394 putative class members is $1,576,000.00 calculated as $4,000 x 394. *Id*. An additional 309 putative class members worked a total of 5,132 pay periods. *Id.*, ¶ 24. For those 309 putative class members, their estimated wage statement penalties are $497,750.00, calculated as $50 x 309 + $100 x (5,132 – 309). *Id*. UniFirst denies that any such penalties are owed to Plaintiff or putative class members. However, for purposes of

---

[3] The statute of limitations for this claim is one year. Cal. Code Civ. Proc. § 340(a).

DEFENDANT UNIFIRST CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

this jurisdictional analysis *only*, UniFirst relies on Plaintiff's allegations that the penalties are owed. Consequently, the amount placed in controversy by Plaintiff's Wage Statement Claim is at least **$2,073,750.00**.

> ### 6)    The Amount Placed in Controversy by the Waiting Time Penalty Claim

51.    In her Fifth Cause of Action, Plaintiff alleges that "at all relevant times, Defendants willfully failed to pay Waiting Time SubClass Members all of their unpaid wages earned, including, but not limited to, minimum, regular, and overtime wages, compensation for non-compliant meal periods and rest periods, and unpaid reimbursements upon separation of employment." Ex. A, Complaint ¶ 83. Plaintiff further alleges that "[a]s a consequence of Defendants' willful conduct in failing to pay all earned wages, Waiting Time SubClass Members are entitled to up to 30 days' wages as a penalty for Defendants' failure to timely pay wages upon separation of employment, in addition to prejudgment interest, attorneys' fees, and costs in amounts that will be established at trial." *Id.* ¶ 84. This is a derivative claim, and thus Plaintiff alleges that because UniFirst allegedly had a consistent, systematic practice of failing to pay for all time worked, including regular and overtime wages and of failing to provide meal and rest breaks, that all those allegedly consistent and systematic violations also resulted in departing employees being deprived of their final wages.

52.    California Labor Code § 203 provides that "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 202.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced but the wages shall not continue for more than 30 days." Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an

employee works during the month." *Mamika v. Barka*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made;" therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days" *Id.* at 493.

53.    Because Plaintiff alleges that the unpaid wages were the result of systematic and consistent illegal practices, it is reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate. *See Quintana v. Claire's Stores, Inc*., No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc*., No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

54.    A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of Am., N.A*., 50 Cal.4th 1389, 1398 (2010).

55.    As set forth in *Bolton v. U.S. Nursing Corp*., No. C 12–04466 LB, 2012 WL 5269738, at *5, (N.D. Cal. Oct. 23, 2012), an employer may establish the amount in controversy for a waiting time penalty claim pursuant to California Labor Code Section 203 by: (1) assessing a minimum hourly rate based on the regular rate applicable to the putative class; (2) multiplying the hourly rate by the average hours

worked per shift; (3) multiplying that number by the number of days in the waiting time period; and (4) multiplying that number by the number of terminated putative class members.

56.     Based on a review of UniFirst's records, from August 30, 2018 through July 24, 2021, there were at least 333 employees who separated from UniFirst. Chiang Decl., ¶ 27.  Plaintiff and putative class members regularly worked 8 hour shifts and the average hours per shift for these 333 putative class members is 8.48 hours. *Id.* Plaintiff alleges she and other putative class members "regularly worked more than eight (8) hours and/or 10 hours per workday and/or over 40 hours per workweek." Ex. A, Complaint ¶¶ 21, 46. Using the average base hourly rate of $15.20 instead of the higher actual hourly rates of departing employees, the amount placed in controversy for waiting time penalties is at least $1,214,784.00 (calculated as $15.20 per hour x 8 hours x 30 days x 333 terminated putative class members). *Id.*, ¶ 27. UniFirst denies that any such penalties are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, UniFirst relies on Plaintiff's allegations that the penalties are owed. Consequently, the amount placed in controversy by Plaintiff's Waiting Time Penalty Claim is at least **$1,214,784.00**.

### 7)     Plaintiff's Request for Attorneys' Fees Places an Additional $1.040 Million in Controversy

57.     Plaintiff also explicitly seeks attorneys' fees should she recover for her claims in this action. *See* Ex. A, Complaint ¶¶ 48, 58, 67, 76, 84, 92, 105, and Prayer for Relief. Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018) (citing *Kirby v. Immoos Fire Prot., Inc.* (2012) 53 Cal.4th 1244,

1255) (the attorneys' fees shifting provisions in Labor Code §§ 218.5 and 1194 to not apply to legal work relating to meal and rest break claims). Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938–IEG–JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'").

58.    Here, UniFirst has established that the total amount in controversy for Plaintiff's Unpaid Wage Claim, Wage Statement Claim and Waiting Time Penalty Claim is at least **$4,162,144**, and Plaintiff has not indicated that she will seek less than 25% of a common fund in attorneys' fees. *See* Ex. A, Complaint ¶¶ 48, 58, 67, 76, 84, 92, 105 (seeking attorneys' fees). Although UniFirst has shown that the amount in controversy absent attorneys' fees surpasses the jurisdictional threshold, this Court should nevertheless include the potential attorneys' fees award in evaluating jurisdiction. *Arias*, 936 F.3d at 922. Indeed, Plaintiff's counsel has previously settled similar class actions in California in which they received in excess of 25% in attorneys' fees as a part of a settlement. *See*, *e.g.*, *Dada v. CyberCoders, Inc.*, Case No. 8:18-cv-01023-JVS-JDE, Document 48 (C.D. Cal. Mar. 6, 2020) (granting plaintiff's firm's motion for attorney's fees of 33.3% of gross settlement amount); *Panter et al. v. Trinity River Lumber Co.*, Case No. 2:14-cv-02277-MCE, Document 68 (E.D. Cal. May 16, 2017) (granting plaintiff's firm's motion for attorneys' fees of 33.3% of gross settlement amount). UniFirst denies that any such attorneys' fees are owed to counsel for Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, UniFirst relies on Plaintiff's allegations that the attorneys' fees are owed.

59.    Using a conservative 25% benchmark figure for attorneys' fees for Plaintiff's allegations regarding (1) alleged unpaid wages; (2) alleged wage

statement violations; and (3) waiting time penalties results in estimated attorneys' fees of at least approximately **$1,040,536**, calculated as follows:[4]

| | |
|---|---:|
| Conservative Estimate of Amount in Controversy from Plaintiff's Claims: | $4,162,144 |
| Attorneys' Fees Benchmark: | 25% |
| Attorneys' Fees: | **$1,040,536** |

### E.    Plaintiff's Claims, Including Attorneys' Fees, Place Nearly $11.8 Million in Controversy

60.    In summary, as described above, a reasonable and conservative estimate of the amount in controversy presented by Plaintiff's unpaid wages, untimely wage payment, meal period, rest period, wage statement and waiting time penalty claims exceeds $5,000,000. Indeed, these six claims alone have placed at least **$10,739,284** in controversy, as follows:

| Claim | Estimated Exposure |
|---|---:|
| Unpaid Wage Claim | $873,610 |
| Untimely Wage Payment Claim | $4,514,500 |
| Meal Period Claim | $1,022,218 |
| Rest Period Claim | $1,040,422 |
| Wage Statement Claim | $2,073,750 |
| Waiting Time Penalties | $1,214,784 |
| Sub-Total | **$10,739,284** |
| 25% Attorneys' Fees | **$1,040,536** |
| **TOTAL** | **$11,779,820** |

61.    Consequently, the amount placed in controversy by Plaintiff's claims

---

[4] In calculating estimated alleged attorneys' fees, UniFirst excluded the estimated amounts in controversy for alleged meal and rest break violations. The calculation for attorneys' fees is actually higher than the conservative estimate calculated here because Plaintiff alleges she is entitled to attorneys' fees for her failure to reimburse business expenses claim.

exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d), and removal to this Court is proper under CAFA.

## III. DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

62.   <u>Venue is Proper</u>. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The State Court Action was pending in the Superior Court of California for the County of San Bernardino, which is located within the Eastern Division of the Central District of California. Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. §84(c) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

63.   In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

64.   In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of Superior Court of California for the County of San Bernardino. Notice of compliance shall be filed promptly afterward with this Court.

65.   As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently filed its Certificate of Interested Parties and Disclosure Statement.

66.   Finally, in the event this Court has any question regarding the propriety of the Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

/ / /

/ / /

/ / /

/ / /

/ / /

DEFENDANT UNIFIRST CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

1    WHEREFORE, Defendant UniFirst Corporation removes the above-entitled

2  action to United States District Court for the Central District of California.

3

4  DATED: October 22, 2021            OGLETREE, DEAKINS, NASH, SMOAK &
                                      STEWART, P.C.
5

6

7                                     By: /s/ Jared L. Palmer
                                          MICHAEL J. NADER
8                                         JARED L. PALMER
                                          Attorneys for Defendant
9                                         UNIFIRST CORPORATION

10

11                                                                48785976.4

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UNIFIRST CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES
DISTRICT COURT